UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DENNIS DELMAR LINCOLN #237169,       Case No. 2:21-cv-00245

    Plaintiff,                          Hon. Paul L. Maloney
                                       U.S. District Judge
v.

CORIZON HEALTH, INC., et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

**I. Introduction**

This Report and Recommendation (R&R) addresses Defendants' motions for summary judgment due to Plaintiff's failure to exhaust his administrative remedies. (ECF No. 15 (motion filed by Defendant Corizon Health, Inc.) and ECF No. 25 (motion filed by Defendant Nurse Whitmer).)

Plaintiff – State Prisoner Dennis Delmar Lincoln – filed an unverified, amended complaint pursuant to 42 U.S.C. § 1983 alleging that he was denied medical care by Nurse Whitmer, an employee at Kinross Correctional Facility (KCF), and Corizon Health, Inc., (Corizon), (ECF No. 14.)

Lincoln says that he suffered right side thorax[1] pain on April 3, 2021. (*Id.*, PageID.97.) The next day, Lincoln says that the Corizon nurse told him to take Tylenol and to pay the $5.00 co-pay. (*Id.*) Later that day, Lincoln complained that

---

[1]     The thorax area is the part of the body from the neck to the abdomen.

he could not breathe but he was not seen by a doctor. (*Id.*) Lincoln was examined by Nurse Knack, who noted that he caught his breath every third breath or so but had air movement in all lung fields, and complained of right torso pain. (*Id.*) Lincoln says that he asked to go to the hospital on April 5 and April 6, but only received an injection of Toradol. (*Id.*)

Lincoln says he first saw Defendant Nurse Whitmer on April 7, 2021. (*Id.*, PageID.99.) Lincoln says Nurse Whitmer told him that the hospital would not do anything for a sprained rib or whatever he had and that he needed to deal with it. (*Id.*) Lincoln was given a hot water bottle. (*Id.*)

On April 8, Lincoln noticed blood in his urine. (*Id.*) Approximately, four hours later, Lincoln was taken to the War Memorial Hospital, where he was given an x-ray and then returned to the prison. (*Id.*)

Lincoln says that he was rushed back to the hospital based upon the results of his chest x-ray. (*Id.*) At the hospital, Lincoln was diagnosed with pneumonia. (*Id.*) Surgery was performed on April 10, 2021, to remove fluid. (*Id.*) Lincoln was transferred to U.P. Health System, Marquette where he underwent an operation to drain more fluid. (*Id.*) Lincoln says he was then placed in an induced coma for 10 days due to the failure of Corizon to allow him to see a doctor. (*Id.*) Lincoln says that as of May 2021, his right lung only inflated approximately 60 percent. (*Id.*)

Defendants move for summary judgment arguing that Lincoln failed to exhaust his administrative grievance remedies prior to filing this lawsuit. Upon review of the record, the undersign concludes that Lincoln failed to name Corizon in

his grievances and that he failed to assert his claim that he did not see a "Corizon doctor" in a grievance. It is respectfully recommended that the Court grant Corizon's summary judgment motion and dismiss Corizon from this lawsuit without prejudice.

It is respectfully recommended that the Court deny Defendant Nurse Whitmer's motion for summary judgment because a genuine issue of material fact exists as to whether Lincoln properly exhausted his claims against Nurse Whitmer prior to filing this lawsuit.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421

---

[2] If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter*

4

*v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at

737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified if an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits.

8

*See id.* at 325.   We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

### IV. Plaintiff's Allegations

Plaintiff's allegations are summarized in the table below.

| Number | Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|---|
| 1 | Deliberate indifference to serious medical need by not being examined by a Corizon doctor, in violation of the 8th Amendment | Corizon | April 3-8, 2021 |
| 2 | Deliberate indifference to serious medical need, in violation of the 8th Amendment | Nurse Whitmer | April 6-7, 2021 |

### V. Grievances Identified by Defendants

In their motions for summary judgment, Corizon and Nurse Whitmer identified three relevant grievances that Lincoln filed with MDOC. They claim that a review of these grievances will demonstrate that Lincoln failed to exhaust his administrative remedies. These grievances are summarized below.

---

[3]   In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

| Grievance No. | Person Named | Allegation | Date of Incident | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| KCF-21-05-0356-28a | Whitmer | Failure to provide medical care and to send Plaintiff to the hospital | 4-7-21 | Rejected as duplicative to KCF-21-05-0362-28e | Rejected | Rejected |
| KCF-21-05-0363-28a | Palmer | Failure to call healthcare | 4-7-21 | Rejected as duplicative to KCF-21-05-0362-28e | Rejected | Rejected |
| KCF-21-05-0362-28e | Whitmer | Failure to provide medical care and to send to hospital | 4-6-21 | Denied | Denied | Rejected as untimely |

**VI. Analysis**

**1. Corizon**

Corizon argues that Lincoln never named Corizon in a grievance and failed to exhaust his claim that he was never examined by a "Corizon doctor." Lincoln argues that he named "Corizon Health" in grievance KCF-21-05-0362-12z (changed to 28e at Step III) at Step I. (ECF No. 17, PageID.176.)

A review of Lincoln's Step I grievance in grievance KCF-21-05-0362-12z demonstrates that Lincoln only named "Corizon health care nurse (Laura?)" in Step I grievance. Lincoln's Step I grievance is shown below.

10

> **MICHIGAN DEPARTMENT OF CORRECTIONS**
> **PRISONER/PAROLEE GRIEVANCE FORM**
>
> Date Received at Step 1: 5/21/21    Grievance Identifier: KCF 2105 362 /2Z
>
> Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.
>
> | Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
> |---|---|---|---|---|---|
> | DENNIS, LINCOLN | 237169 | KCF | B-1-73 | 4-6-21 | 5-17-21 |
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? ___
> If none, explain why.
>
> Due to the unique circumstances, I have had no available means to resolve this issue. This writer was on life support for weeks.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.
>
> On the approximate date above this writer, had officers call the Corizon health care nurse (Laura?), to inform her of the pain this writer felt in his right side. The nurse allowed this writer to come to health services to be checked. Later, this writer began experiencing fits of pain in his right side and, shortness of breath. This writers pain was so immense, that he could not find a pain free position. He could not lay down, sit down, or stand without being in immense pain. This writer again called the nurse. She said this writer had been seen and, she could contact the morning nurse. She said the hospital would not do anything for a cracked rib or pulled muscle. We later found that this writer had pneumonia.
>
> _[signature]_ Grievant's Signature

(ECF No. 15-1, PageID.145.)

Lincoln was grieving a nurse who he believed was named Laura. The Court assumes that Lincoln intended to grieve Nurse Laura Whitmer. Lincoln identified her as a Corizon health care nurse.[4] Lincoln did not assert a claim against Corizon Health, Inc. by identifying a Corizon nurse. In addition, Lincoln did not assert his

---

[4] It appears that Lincoln was incorrect in identifying Nurse Whitmer as a Corizon employee. (ECF No. 15, PageID.119.) The fact that Nurse Whitmer is represented by the Michigan Attorney General's Office is an indication that she is a State of Michigan employee.

11

claim that he was not seen a Corizon doctor in any of his grievances. In the opinion of the undersigned, Lincoln failed to name Defendant Corizon Health, Inc. in any relevant grievance and, accordingly, he failed to exhaust his claims against Corizon.

### 2. Nurse Whitmer

Nurse Whitmer argues that Lincoln failed to properly exhaust his claim against her because all three of his relevant grievances were rejected and not addressed on the merits of the claims asserted. The record before the Court indicates that grievances KCF-21-05-0364-28a and KCF-21-05-0363-28a were rejected as duplicative to KCF-21-05-0362-28a. Nurse Whitmer correctly states that the Court should look through the rejected, duplicative grievances to the earlier grievance in order to determine whether the prisoner had properly exhausted his claims or had an available remedy to exhaust his claims. (ECF No. 26, PageID.235 (citing *Snider v. Schmidt*, No. 2:19-cv-134, 2020 WL 7049387, at *4 (W.D. Mich. Aug. 12, 2020).)

As an initial matter, the Court notes that Lincoln's Step III appeal in grievance KCF-21-05-0362-28a was rejected as untimely. Lincoln argues that his Step III appeal was timely because he did not receive the Step II response until June 30, 2021, and he mailed his Step III grievance out of the prison on July 1, 2021. (ECF No. 27, PageID.282-283, 295-296 (response to Whitmer motion for summary judgment); *see also* ECF No. 17, PageID.172-73 (response to Corizon motion for summary judgment).)

The Step II response indicates that it was returned to Lincoln on June 14, 2021.

(ECF No. 26-3, PageID.269.)

The Step III response, which is dated July 29, 2021, rejected Lincoln's Step III appeal as untimely. The Step III response is shown below.

**Step III Grievance Response**

DENNIS LINCOLN          237169

KCF     21050362

Grievant alleges the Nurse did not appropriately address his right side pain concerns.

In accordance to PD 03.02.130 grievances are to be rejected when untimely. Pursuant to policy, this grievance was untimely filed by the grievant at the Step III appeal. The grievant's Step III appeal was received on July 16, 2021. While providing a grace period for standard mail; the grievance however was still not received in a suitable timeframe after the due date of June 29, 2021.

The grievance tracking number has been changed from KCF-21-05-0362-12Z to KCF-21-05-0362-28e in order to reflect the grievance category code at Step III.

Grievance rejected.

Response of Bureau of Health Care Services      Date: 7/27/2021

Approved: *Smoyer RN*      Date: 7/29/2021
S. Smoyer, RN

*RD Russell*      MAILED AUG - 2 2021
Richard D. Russell Manager, Grievance Section Office of Legal Affairs      Date Mailed

(ECF No. 26-3, PageID.268.)

Although, the Step II form has a notation that indicates it was returned to Lincoln on June 14, 2021 (ECF No. 26-3, PageID.269), Defendant Whitmer, who has the burden in this motion, has not submitted an affidavit to support the date the Step II grievance was returned. *Nelson v. Wilson*, 2:19-cv-9, 2020 WL 5105035, *1 (W.D. Mich., Aug. 31, 2020) (finding a genuine issue of fact existed on the issue of whether

the Step III grievance was properly rejected for being untimely, based upon the date the prisoner stated he received the Step II rejection of his grievance)) And here, Lincoln's verified response states that he did not receive the Step II response until June 30, 2021, and that he sent out his Step III appeal the next day. (ECF No. 27, PageID.282-83 (response), PageID.290 (verification).) As noted above, the Court must view the evidence presented in the light most favorable to Lincoln. In the opinion of the undersigned, a genuine issue of fact exists on the issue of when the Step II was returned to Lincoln and whether his Step III grievance appeal was properly rejected as untimely. In the opinion of the undersigned, Defendant Whitmer has not established that Lincoln failed to exhaust his available administrative remedies.

## VII. Recommendation

The undersigned respectfully recommends that this Court grant Defendant Corizon's motion for summary judgment (ECF No. 15) and dismiss Defendant Corizon without prejudice due to Lincoln's failure to exhaust his administrative grievance remedies.

It is also respectfully recommended that the Court deny Defendant Whitmer's motion for summary judgment (ECF No. 25) because a genuine issue of material fact exists regarding whether Lincoln properly exhausted his claims against her.

Dated:   July 22, 2022                               /s/ *Maarten Vermaat*
                                                                MAARTEN VERMAAT
                                                                U. S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).