UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DENNIS DELMAR LINCOLN #237169,

    Plaintiff,

v.

CORIZON HEALTH, INC., et al.,

    Defendants.
_____/

Case No.  2:21-cv-00245

Hon.  Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses the summary judgment motion filed by Defendant Registered Nurse (RN) Witmer. (ECF No. 52.)

The Plaintiff in this case – state prisoner Dennis Delmar Lincoln – filed this civil rights action pursuant to 42 U.S.C. § 1983. He alleges that his rights were violated while he was confined at the Kinross Correctional Facility. (ECF No. 14.) Plaintiff's unverified amended complaint alleged that Corizon Health, Inc. (Corizon), and Corizon RN Laura Witmer violated his Eighth Amendment rights. (*Id.*, PageID.97.) Corizon has been dismissed from this action.

Lincoln has misidentified Defendant RN Witmer's employer. Defendant RN Witmer was employed by the Michigan Department of Corrections and was not employed by Corizon. (ECF No. 53-19, PageID.527 (Affidavit of RN Witmer).) Lincoln initially presented to prison health care on April 3, 2021, with complaints of

pain on the right side of his body. He returned to health care on April 6, 2021, with continued complaints of pain. By April 7, 2021, Nurse Practitioner (NP) Jamros began treating Lincoln directly. NP Jamros had scheduled Lincoln to visit the War Memorial Hospital in Sault Ste. Marie, MI to receive an x-ray, and she provided him with prescription pain medication.

Later that day, Defendant RN Witmer examined Lincoln when he returned to health care. RN Witmer was aware of the NP Jamros's earlier assessment of Lincoln that day. RN Witmer took Lincoln's vital signs but did not believe that he was suffering from anything other than the thoracic injury that was earlier assessed by NP Jamros. RN Witmer offered Lincoln a warm water bottle for comfort. This was RN Witmer's only involvement with Lincoln.

The next day, Lincoln visited the hospital for his x-ray and then returned to the prison. After his x-ray was reviewed, the hospital staff discovered that although, Lincoln did not have an injury, he still needed to return to the hospital for further evaluation. Lincoln was diagnosed with pneumonia and his condition worsened while he was hospitalized. Lincoln underwent procedures to remove fluid from his lungs. Lincoln asserts that Defendant RN Witmer should have sent him to the hospital when she examined him the evening of April 7, 2021, and that the delay caused him to suffer unnecessarily.

RN Witmer's involvement in assessing Lincoln's medical condition was limited. In the opinion of the undersigned, it is respectfully recommended that Court conclude that RN Witmer has met her burden of establishing that no genuine issue of fact

exists on Plaintiff's Eighth Amendment claims against her and that she is entitled to judgment.

## II. Factual Allegations

Lincoln alleges that on April 3, 2021, he was suffering with extreme pain and pressure on the right side of his body. (*Id.*, PageID.97.) On April 4, 2021, Lincoln says that he was told by the Corizon nurse to take Tylenol and submit a formal request for health care and to pay a $5.00 co-pay. (*Id.*) Later that day, Lincoln says that he visited the "Corizon Health Building", where he was given ibuprofen and Tylenol. (*Id.*) Lincoln says that he was assessed by RN Knack for his difficulty breathing. (*Id.*, PageID.98.)

On April 5, 2021, while being tested for COVID-19, Lincoln asked the nurse if she would send him to the hospital due to the pain that he was experiencing. (*Id.*) Lincoln says that the nurse told him that all the nurses were testing for COVID-19 but she would see what she could do later. (*Id.*) On April 6, 2021, Lincoln visited Health Services because he could hardly breathe or walk, and he was experiencing immense pain on the right side. (*Id.*)

Lincoln says he was examined by RN Eicher and that he received an injection of Toradol. (*Id.*) Lincoln says that he telephoned his mother that day and begged her to call the prison warden and have him sent to the hospital. (*Id.*) Later that day, Lincoln says that he spoke with a nurse on the telephone and begged her to send him to the hospital, but she refused his request and told him to allow the Toradol shot to work. (*Id.*)

On April 7, 2021, Lincoln was seen by a nurse in Health Services, who told him to stretch, take the medication given, and to use a warm compress. (*Id.*) Lincoln says that he could barely breathe or walk. (*Id.*) Lincoln says that he was never examined by a doctor while under Corizon's care. (*Id.*, PageID.99.)

Lincoln says that he first saw Defendant RN Witmer in Health Services on April 7, 2021. (*Id.*) Lincoln says that he was crying on the floor for 30 minutes due to the pain he was experiencing. (*Id.*) RN Witmer told him that he was scheduled to see the Nurse Practitioner on the 9th and that the hospital would not do anything for a sprained rib so he would have to just deal with it. (*Id.*) Lincoln stated: "I want to go to the hospital." (*Id.*) RN Witmer responded that "You aren't going to the hospital! So do you want the hot water bottle or not? Are you refusing the hot water bottle? Fine, you're going down as a refusal. They won't approve a hospital visit, so what do you want to do?" (*Id.*) Lincoln says that he left Health Services and later received a hot water bottle. (*Id.*)

Lincoln noted blood in his urine on April 8, 2021, and later that day he was taken to War Memorial Hospital for an x-ray. (*Id.*) Lincoln returned to prison and was sent back to his bunk. (*Id.*) Lincoln says that later that day, the hospital faxed his x-rays to the nurse, and he was immediately taken back to the hospital by ambulance. (*Id.*, PageID.100.) Lincoln says that he was never seen by a Corizon doctor at the prison. (*Id.*) At the hospital, he was evaluated and, upon review of lab data, it was determined that he had pneumonia. (*Id.*) Lincoln says that his condition worsened at the hospital, and he underwent a procedure to remove the fluid

4

from his lungs. (*Id.*) He was transferred to the U.P. Health System, in Marquette for video-assisted thoracotomy surgery. (*Id.*, PageID.101.) Lincoln says that he underwent another procedure to drain his lungs and was placed in an induced coma for 10 days. (*Id.*)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV. Eighth Amendment – deliberate indifference

Lincoln asserts that RN Witmer acted with deliberate indifference by failing to immediately send him to the hospital on April 7, 2021. (ECF No. 14, PageID.99, 105.) The Eighth Amendment prohibits the infliction of cruel and unusual

punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention

6

clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was

obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second

8

guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

"[T]he right to adequate medical care does not encompass the right to be diagnosed correctly[.]" *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005); *see also Jones v. Muskegon Cnty.*, 625 F.3d 935, 944–45 (6th Cir. 2010) (finding that the doctor's initial incorrect diagnosis of severe constipation, even "in light of [the prisoner's] substantial weight loss and sharp stomach pain[,]" amounted only to negligence given the prisoner also complained of his "inability to have a bowel movement for several days and other stomach pains, which could have been consistent with [the doctor's] diagnosis").

On April 4, 2021, Lincoln was seen in health care by RN Knack for complaints of difficulty breathing and pain from falling and striking his torso. (ECF No. 53-4, PageID.448.) Lincoln was taking shallow breaths and had no sign of trauma. (*Id.*, PageID.449.) RN Knack advised Lincoln to cough and deep breath at least four times a day and explained how to splint his torso. (*Id.*)

On April 6, 2021, Lincoln was seen in health care by RN Eicher for complaints of right-side rib pain. (ECF No. 53-5, PageID.452.) Lincoln explained to RN Eicher that he injured himself while doing dips on April 2, and that it hurt to breathe in and out. (*Id.*) Lincoln told RN Eicher that "I need that shot." (*Id.*) Nurse Practitioner Jamros was consulted and ordered Ultram for pain. (*Id.*, PageID.453.) Lincoln was scheduled for recheck on April 9, 2021. (*Id.*)

On April 7, 2021, Lincoln was seen in health care by NP Jamros at 8:24 A.M. for complaints of shooting pain. Lincoln believed that the pain began after he hit the bar when he was doing dips. (ECF No. 53-6, PageID.455.) NP Jamros noted that Lincoln had been seen several times in health care and received Ultram and two doses of Toradol for pain. (*Id.*) Lincoln stated that Ibuprofen was not helpful. (*Id.*) NP Jamros assessed a rib sprain and requested x-rays within 72 hours at War Memorial Hospital. (*Id.*, PageID.455-456.) NP Jamros instructed Lincoln to gently stretch and to use a warm compress. (*Id.*, PageID.456.)

Later that day, at 7:30 P.M., Lincoln was seen at health care by Defendant RN Witmer. (ECF No. 53-7, PageID.458.) RN Witmer's encounter note indicates that NP Jamros had earlier provided pain medication, instructions on stretching and to

use a warm compress. (*Id.*) RN Witmer offered Lincoln a hot water bottle and Lincoln refused.

The encounter note is shown below.

> Inmate at HC c/o rib pain. Inmate amb to HC via w/c assist, A&O x3 speech clear & appropriate, lungs CTA, chest expansion equal bilateral, 02 stats 98% RA, inmate in HC taken deep breath, but states pain with breathing, inmate right side chest/rids no noted redness, swelling, spasm or bruising, inmate has active order for Ultram 50 mg two tabs PO TID PRN x5 days, inmate has been compliant with order, inmate was seen by NP Jamros this morning and per NP note inmate was given Toradol x2, and instructed on gentle stretching and warm compresses, inmate was educated on rest/activity, gentle stretching exercising, pain and medication, inmate at this time offered x3 a hot water bottle and refused x3 a hot water bottle, inmate instructed to call HC with any problem or concerns, inmate understood education/instructions and exit HC.

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 04/07/2021 | 19:10 | 97.2 | 36.2 | KCF | Witmer, Laura [LW8] RN |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 04/07/2021 | 19:10 | 98 | KCF | | Witmer, Laura [LW8] RN |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 04/07/2021 | 19:10 KCF | 18 | Witmer, Laura [LW8] RN |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 04/07/2021 | 19:10 KCF | 138/73 | | | | Witmer, Laura [LW8] RN |

**SpO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 04/07/2021 | 19:10 KCF | 98 | Room Air | Witmer, Laura [LW8] RN |

**Weight:**

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|---|---|---|---|---|---|
| 04/07/2021 | 19:10 KCF | Unavailable | 0.0 | | Witmer, Laura [LW8] RN |

(ECF No. 53-7, PageID.458.)

The next day, Lincoln went to War Memorial Hospital for his x-ray. He returned to the prison without results. When the results were available, they showed that his ribs were normal but other issues were noted. As a result, he was returned to the hospital for further treatment. Lincoln was diagnosed with pneumonia at the hospital. Lincoln was initially treated with antibiotics, but his condition worsened, and he underwent procedures to drain the fluid and was

11

ultimately transferred to UP Health System in Marquette where he remained until his discharge on April 30, 2021. (ECF Nos. 53-11, 53-13, 53-16, 53-18.)

Lincoln alleges that RN Witmer acted with deliberate indifference by failing to send him to the hospital when she examined him on April 7, 2021. As alleged in Lincoln's complaint, April 7, 2021, was the first and only interaction that Lincoln had with RN Witmer. RN Witmer argues that she is entitled to summary judgment because Lincoln cannot support the subjective and objective elements of his Eighth Amendment claim.

### 1. Serious Medical Need

The objective element of an Eighth Amendment claim is satisfied where the need for medical treatment or care is obvious to a lay person. *Blackmore*, 390 F.3d at 899. By the time Lincoln was examined by RN Witmer on the evening of April 7, 2023, he had a documented medical need and was taking Ultram tablets and had received two injections of Toradol for pain. It was indicated that he was having difficulty breathing and he was scheduled to receive an x-ray at the local hospital. In the opinion of the undesigned, a genuine issue of material fact exists on the issue of whether Lincoln presented with a serious medical need when he was examined by RN Witmer.

### 2. Deliberate Indifference

Lincoln had already received treatment from NP Jamros earlier in the day on April 7, 2021. NP Jamros had previously ordered an x-ray at War Memorial Hospital, provided Lincoln with Ultram and Toradol for pain, and assessed a thoracic

injury. To establish that RN Witmer acted with deliberate indifference to his medical needs, Lincoln must show that RN Witmer was more than merely negligent but that her conduct was so excessive that it shocks the conscience or was intolerable to fundamental fairness. *Miller*, 408 F.3d at 819.

RN Witmer does not have the authority to diagnosis patients in the same manner as a doctor or as a nurse practitioner. (ECF No. 53-19, PageID.528 (affidavit of RN Witmer).) NP Jamros had already assessed Lincoln the very same day and she provided pain medication and instructed Lincoln to stretch and use warm compresses. (*Id.*, PageID.528.) RN Witmer offered Lincoln a warm water bottle, which was consistent with NP Jamros's earlier diagnosis and treatment. (*Id.*) RN Witmer did not observe anything that would make her believe that Lincoln had pneumonia or that he needed to immediately go to the hospital. (*Id.*)

Lincoln was taken to the hospital the next day, April 8, for his scheduled x-ray. He returned to the prison after the x-ray was completed. The x-ray results showed that Lincoln needed to return to the hospital for further treatment. Based on this sequence of events, Lincoln learned that he had pneumonia. Nevertheless, there is no evidence that could support a conclusion that RN Witmer acted with deliberate indifference to Lincoln's serious medical needs. RN Witmer's involvement with Lincoln's medical care was limited to one occasion. She saw Lincoln the same day that NP Jamros examined him and provided a preliminary diagnosis. At this point, Lincoln had been scheduled for an x-ray the following day at War Memorial Hospital.

At best, Lincoln has asserted that RN Witmer may have been negligent, but negligence does not rise to the level of deliberate indifference.

## V. Qualified Immunity

Alternatively, RN Witmer argues that she is entitled to qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to

qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define

> clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

First, as stated above, at best Lincoln has asserted that RN Witmer was negligent, but negligence is not equivalent to deliberate indifference. Lincoln has asserted that RN Witmer should have diagnosed him with a serious condition, and she should have immediately sent him to the hospital. But RN Witmer is not a doctor, or a nurse practitioner and she did not have authority to diagnose patients. Lincoln was examined earlier in the day by NP Jamros. NP Jamros assessed a possible thoracic injury. She provided pain medication and scheduled Lincoln to go to the hospital the next day for an x-ray.

RN Witmer acted reasonably by relying on the nurse practitioner's assessment, but she also did more than that. She looked at Lincoln's vital signs and offered him a warm water bottle for comfort. At the time, RN Witmer assessed Lincoln, the evidence shows that she acted reasonably and that she did not act with deliberate indifference to Lincoln's medical needs. In the opinion of the undersigned, RN Witmer is entitled to qualified immunity.

## VI. Recommendation

It is respectfully recommended that the Court grant RN Witmer's motion for summary judgment because no genuine issue of material fact exists to support Lincoln's Eighth Amendment claim against her and she is entitled to judgment as a matter of law.   If the Court accepts this recommendation, this case will be dismissed.

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:    March 24, 2023                                          /s/ *Maarten Vermaat*
                                                                              MAARTEN VERMAAT
                                                                              U.S. MAGISTRATE JUDGE